UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| B.L., | ) | |
|    Plaintiff, | ) ) ) | Case No. 5:24-cv-00080-GFVT |
| v. | ) ) | **MEMORANDUM OPINION** |
| LELAND DUDEK, *Acting Commissioner of Social Security*, | ) ) ) | **&** **ORDER** |
|    Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff B.L. seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's ("Commissioner") administrative decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] For the reasons stated below, the Court will **DENY** B.L.'s Motion for Summary Judgment [R. 8] and **GRANT** that of the Commissioner [R. 10].

**I**

B.L. filed his application for benefits on August 19, 2021. [R. 8 at 1.] His application was denied initially and upon reconsideration. *Id*. B.L. then submitted a written request for a hearing. *Id*. Administrative Law Judge ("ALJ") Greg Holsclaw conducted a hearing on January 10, 2023. *Id*. B.L. alleges disability due to a number of impairments. [*See* R. 5-2 at 30.] He suffers from psychogenic seizures, diabetes, obesity, depression, anxiety, and post-traumatic stress disorder with dissociative symptoms. *See id.*

---

[1] The claimant's initials are used in lieu of their name to protect their sensitive medical information contained throughout the Memorandum Opinion and Order.

In evaluating a claim of disability, the ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520.[2] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairments experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). The plaintiff has the ultimate burden of proving compliance with the first four steps. *Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). Fifth, if a claimant's impairments (considering his RFC, age,

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

education, and past work) prevent him from doing other work that exists in the national economy, he is "disabled." 20 C.F.R. § 404.1520(f).

In this case, the ALJ issued his written decision on February 28, 2023. [R. 5-2 at 39.] At Step 1, the ALJ found that B.L. has not engaged in substantial gainful activity since January 2, 2021. [R. 5-2 at 30.] At Step 2, the ALJ found that B.L. had the following severe impairments: "psychogenic seizures, diabetes, obesity, depression, anxiety, and post-traumatic stress disorder with dissociative symptoms." *Id*. At Step 3, the ALJ concluded that B.L. did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)," so his analysis continued to the next step. *Id*. At Step 4, the ALJ concluded that B.L. has an RFC to "perform less than light work" subject to certain non-exertional limitations. *Id.* at 32. Those limitations are:

> no lifting/carrying more than 20 pounds occasionally, 10 pounds frequently; no standing/walking more than six hours out of an eight-hour day; no sitting more than six hours out of an eight-hour day; can do unlimited pushing/pulling up to the exertional limitations; no more than frequent balancing, no more than occasional stooping, kneeling, crouching, crawling or climbing ramps or stairs, but no climbing ladders, ropes or scaffolds; no work in areas of concentrated dusts, fumes, gases or other pulmonary irritants; no work in sound environments that are more than moderately loud (with the term "moderate" used here as defined in the Selected Characteristics of Occupations); no work in areas of concentrated full body vibration; no work around dangerous, moving machinery or unprotected heights; can understand, remember and carry out simple instructions; no more than occasional interaction with co-workers, supervisors, and the general public; no more than occasional changes in the workplace setting.

*Id*. Finally, at Step 5, the ALJ found that after "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 38. As a result, he concluded that

3

B.L. was not disabled. *Id.* at 39. The Appeals Council found no reason for review. [R. 1-1 at 2.] B.L. now seeks judicial review in this Court.

**II**

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

4

### A

B.L. first argues that ALJ did not afford appropriate weight to medical opinions in assigning the RCF. B.L. attended an examination with Dr. Marcella Ramsey. [R. 5-7 at 338.] Dr. Ramsey, the treating provider, concluded that B.L.'s condition caused difficultly in making work-related decisions, working around others, performing at a consistent pace, responding to changes in a work routine, and dealing with stress. *Id.* at 340. Dr. Ramsey also noted that B.L. would be off-task at least 25% of the day and take off more than 4 days of work per month. *Id.* at 341. Specifically, B.L. argued that the ALJ incorrectly deemed Dr. Ramsey's opinion to be unpersuasive. [R. 8 at 13.] The ALJ summarized Dr. Ramsey's opinion as follows:

> Marcella Ramsey, LPCC, a treating provider, opined that the claimant had marked restrictions making simple work-related decisions, working around others, performing at a consistent pace, responding to changes in a routine work setting, dealing with normal stress, and remembering work-like procedures; he would be off-task 25% of the day; and he would miss more than 4 days of work per month (7F). Ms. Ramsey's opinion is inconsistent with her own exam findings. She noted that the claimant was making moderate or adequate improvement with treatment (9F, 69, 146). The claimant was cooperative and maintained good eye contact (9F, 23, 68, 92, 99, 157). His thoughts were goal directed and reality based, or she noted no thought abnormalities such as racing, illogical, or incoherent thoughts (9F, 23, 68, 92, 99, 157, 227). He was negative for perceptional and psychotic disturbances (9F, 23, 93, 158, 202). He denied suicidal ideation and was not at risk to himself (9F, 23, 206, 233). She noted no cognitive impairments, including no impairment in memory, concentration, judgment, and insight (9F, 68, 99, 117, 157, 227). He possessed a normal and euthymic mood and affect (9F, 68, 139, 145, 157). He was alert and oriented to person, place, and time (9F, 74, 80, 92, 99). In March 2022, he reported that he had recently gone out with a friend and had been playing games online (9F, 241). Accordingly, the undersigned finds this opinion unpersuasive.

[R. 5-2 at 37.] Under 20 C.F.R. § 404.1527(d)(2), a medical source's opinion on the issues of the nature and severity of a claimant's impairments is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not

5

inconsistent with other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).

B.L. argues that the ALJ, in finding Dr. Ramsey's opinion unpersuasive, relied primarily on the opinions of Dr. Cornett, another MHCC provider. [R. 8 at 14.] The Court, however, finds that the ALJ adequately considered Dr. Ramsey's own examination findings, as well as the findings of Dr. Cornett in reaching the conclusion that Dr. Ramsey's opinion was inconsistent both with her own findings and others' medical findings. The ALJ explained that the opinion is not well supported because it is inconsistent with the other evidence. Some examples include that B.L. was able to "answer questions and follow commands," as well as demonstrate "normal fine motor skills." [R. 5-2 at 30.] Further, the ALJ deemed the state agency determinations, which rejected B.L.'s severe limitations, to be more persuasive. *Id.* One determination described B.L.'s limitations to be "no more than mild mental restrictions." *Id.* at 36. Another initial determination from a mental residual functional capacity assessment found as follows:

> [T]he claimant had moderate limitations in all areas of mental functioning that restricted him to simple instructions and procedures requiring brief initial learning periods (usually 30 days or less); sustaining concentration, persistence, or pace for simple tasks requiring little independent judgment and involving minimal variations and doing so at requisite schedules of work and breaks, including 2-hour time blocks; frequent interaction with supervisors and peers but no more than occasional contact with the public; and adapting to situational conditions and changes with reasonable support and structure

*Id.*

In *Eckert v. O'Malley*, which the Plaintiff relies heavily on, the court remanded the case back to the SSA. *Eckert v. O'Malley,* No. 5:22-CV-00316-MAS, 2024 WL 841765, at *5 (E.D. Ky. Feb. 28, 2024). However, *Eckert* is distinguishable because the *Eckert* ALJ's details "regarding the objective medical evidence . . . [were] . . . located earlier in the ALJ's decision rather than in the ALJ's analyses of the consistency and supportability factors." *Id.* at *5. In this

6

case, however, the ALJ includes his factual predicate in his analysis, such that the Court can adequately assess how he reached his conclusions. [R. 5-2 at 35-36.]

Ultimately, the ALJ's explanation is sufficiently detailed to enable B.L. to understand why Dr. Ramsey's medical opinion was granted little weight. *Wilson,* 378 F.3d at 544; *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005); *see also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006). And the state agency determinations support the finding that B.L. was capable of light work. This Court's role is not to resolve the alleged conflict in the evidence, but to determine if substantial evidence supports the ALJ's decision. *Ulman*, 693 F.3d at 713. Though there may have been evidence to the contrary, the state agency determinations provide substantial evidence that Lyons does not require severe limitations, precluding this Court from reversing the ALJ. *Id.*

**B**

B.L. next argues that the ALJ discredited his testimony and statements regarding his psychogenic seizures. [R. 8 at 19.] Specifically, he argues that "the ALJ improperly evaluated them through the lens of physical impairment, rather than a mental impairment." [R. 8 at 19.] ALJs cannot reject a claimant's "statements about the intensity and persistence of [his] pain or other symptoms . . . solely because the available objective medical evidence does not substantiate [his] statements." 20 C.F.R. § 404.1529(c)(2); *accord Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994). Other than medical evidence, ALJs should consider: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of her pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication he takes to alleviate his pain; (5) treatment other than medication; (6) any measures he uses to relieve his pain; and (7) other factors concerning his functional limitations and

7

restrictions due to pain. *See* 20 C.F.R. § 404.1529(c)(2)(i)–(vii); *Felisky*, 35 F.3d at 1039. The regulations also permit ALJs to consider "observations by our employees and other persons." 20 C.F.R. § 404.159(c)(3). ALJs do not have to include "a factor-by-factor discussion" of these considerations in their opinions. *Storey v. Comm'r of Soc. Sec.*, No. 98-1628, 1999 U.S. App. LEXIS 8357, at *9 (6th Cir. Apr. 27, 1999).

Moreover, ALJs can make credibility determinations based on facts from a claimant's testimony. *Id.* Reviewing courts defer to an ALJ's findings regarding the credibility of the applicant because the ALJ can observe her demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.*

In addition to the extensive medical evidence that conflicted with B.L.'s characterization of his pain, the ALJ included various non-medical reasons to discount B.L.'s testimony. First, the ALJ considered an observation by seizure witnesses who "noted no postictal state." [R. 5-2 at 34.] Second, the ALJ noted that B.L.'s "[h]obbies included fishing, exercise, and archery" and "he worked part-time, 15-20 hours at Papa John's." *Id.* at 35. The ALJ did not rely only on the objective medical evidence to find that B.L.'s account of his pain lacked credibility. *C.f. Felisky*, 35 F.3d at 1039 (ALJ *only* considered the medical record). Instead, the ALJ properly exercised his discretion to discount B.L.'s credibility. The record reflects substantial evidence in support of the RFC developed by the ALJ.

### III

Thus, after reviewing the record, the Court finds that the ALJ's decision finding

B.L. is not disabled is supported by substantial evidence. Even if the evidence could also support another conclusion, the ALJ's decision must stand because the evidence reasonably supports his conclusion. *See Her*, 203 F.3d at 389-90; *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. B.L.'s Motion for Summary Judgment **[R. 8]** is **DENIED**; and

2. **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This the 7th day of March, 2025.

Gregory F. Van Tatenhove
United States District Judge